Lilley Estate.

Argued November 17, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

*S. Jonathan Emerson*, with him *J. Jackson Eaton, III, James G. Watt, Montgomery, McCracken, Walker & Rhoads,* and *Butz, Hudders & Tallman,* for appellant.

*Francis M. Richards, Jr.,* with him *James R. Ledwith,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 18, 1971:

Edward C. Lilley died November 6, 1936. Under his will dated January 3, 1936, he left his residuary estate in trust. In this appeal, we are called upon to determine, in the light of all the language of the will, the meaning of the following language which appears as part of the Eleventh paragraph of his will: "... I have at the time of the execution of this my Last Will

one grandchild, MARGARET ANN LILLEY, and my wife has one grandchild by a former marriage, DOROTHY ADELE ALLEN. At the death of the last surviving child of mine and [of the last surviving child]* of my wife KATHRYN C. LILLEY, I direct that . . . my residuary estate shall be divided into as many equal parts as there may be grandchildren then living, including my wife's grandchild DOROTHY ADELE ALLEN."

Testator's first wife, who died in 1893, bore him three children, Doris, Clifford and Lyman. Each of his children survived him; the last survivor was Doris, who died March 14, 1969. In 1907, testator married Kathryn Allen, a widow who had a son by a previous marriage, Richard M. Allen. Kathryn died on June 27, 1943. Richard is still living. No children were born of testator's marriage to Kathryn Allen.

The testator had only one grandchild, Margaret Ann Lilley (now Mrs. Ann Mason). Margaret was born, as above noted, before testator drew his will, and was his only grandchild at the time of his death and at the death of his last surviving child. *During testator's lifetime,* his second wife, Kathryn, had one (and only one) grandchild, Dorothy Adele Allen (now Mrs. Dorothy Wales). As above mentioned, she was Kathryn's granddaughter by her first marriage.

In 1939, almost three years after testator's death, Richard Allen, who was Kathryn's son by her first marriage, divorced his wife and married his second wife, Ruth. They had a child, Natalie Allen, who was born in September 1943 and is the present appellant.

Testator left a personal estate of $175,000, which, for some undisclosed reason, became $108,000 at the death of his last surviving child (Doris) in 1969. The practical question involved is whether to divide the

---

* This is the way appellant interprets the meaning of testator's language.

4

principal of the residuary trust (a) into two equal parts—one for Margaret who was testator's grandchild and one for Dorothy who was Kathryn's grandchild, both of whom were living at the death of testator's last surviving child, Doris, in 1969—or (b) into three equal parts to include Natalie Allen, who was Richard M. Allen's daughter and Kathryn's grandchild. Natalie was born after the death of both the testator and Kathryn. The Orphans' Court excluded Natalie, and she has appealed to this Court.

In this appeal, Natalie makes two contentions: First, she contends that the will manifests an intent to benefit *equally* both the Lilley and Allen family lines, and that the class of takers should not be determined until Richard M. Allen (as a "surviving child") dies. Second, she contends that upon the termination of the trust, she is entitled to share as a "grandchild," *now*, or at the death of Richard M. Allen, if the trust terminates at Richard's death. For reasons hereinafter stated, we disagree.

In *Jessup Estate,* 441 Pa. 365, 276 A. 2d 499 (1970), the Court, quoting from *Matthews Estate,* 439 Pa. 69, 72, 264 A. 2d 714, said (pp. 370-71) : " ' "We recently said in Carter Will, 435 Pa. 492, 257 A. 2d 843 (pages 496-497) : 'The law and the legal principles governing the interpretation of wills [are] well settled but their application to poorly or ambiguously drawn wills (especially to holographic wills and lengthy testamentary trusts) is often difficult. The pertinent principles may thus be briefly summarized : *A testator's intent, unless unlawful, shall prevail;* that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) *canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's*

*intent is for any reason uncertain.*\* Houston Estate, 414 Pa. 579, 201 A. 2d 592; Burleigh Estate, 405 Pa. 373, 175 A. 2d 838; Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197; Lewis Estate, 407 Pa. 518, 520, 180 A. 2d 919. See also, Benedum Estate, 427 Pa. 408, 235 A. 2d 129.' " Derham Will, 435 Pa. 590, 258 A. 2d 650.' "

Testator's second wife, Kathryn, was undoubtedly the principal object of his bounty and his children were his second. In the Second, Third and Fourth paragraphs of his will he gave his wife all his furniture, all articles of personal and household use, his automobiles, $600 and his house for life, free of all charges, taxes and repairs. In the Fifth paragraph of his will, he gave his residuary estate in trust to pay his wife annually at least $4,000, and should his daughter Doris become "self-dependent," at least $1,800 annually to Doris. He then gave each of two named cousins $300 annually for their lives, and if his daughter Doris was not self-dependent, she was to share with his sons the balance of income. Testator then gave specific amounts of additional income to his wife and his three children if and when the annual income from his residuary estate increased to certain stipulated amounts.

In the Ninth paragraph, he gave at the death of his wife an annuity of $1,200\*\* to Richard M. Allen and his wife, Dorothy, in equal shares ($600 each), and the whole to the survivor, and an annuity of $1,000 to his sister. In the Tenth paragraph, he gave the bal-

---

\* Italics in *Jessup Estate.*

\*\* It is not necessary to continue the trust in order to provide the annuity to Richard M. Allen and his former wife, Dorothy. The Orphans' Court approved the parties' agreement to apply the amount from the trust principal toward the immediate purchase of a commercial annuity to meet this obligation.

ance of the net income after the death of his wife, Kathryn, to his three (named) children.

In the controversial Eleventh paragraph of his will, he provided as follows:

"ELEVENTH: In the event of the death of any of my children before or after the death of my wife, leaving issue him or her surviving, such issue shall take by representation the share of income which their deceased executor would have taken if living. If there be no surviving issue, then the share of income of such deceased child of mine shall be added to the shares payable to my wife and children then living. I have at the time of the execution of this my Last Will one grandchild, MARGARET ANN LILLEY, and my wife has one grandchild by a former marriage, DOROTHY ADELE ALLEN. *At the death of the last surviving child of mine and of my wife* KATHRYN C. LILLEY, I direct that . . . *my residuary estate shall be divided into as many equal parts as there may be grandchildren then living, including my wife's grandchild* DOROTHY ADELE ALLEN."**

The language of the Eleventh paragraph is anything but clear, and therefore we will have to consider and determine its meaning in conjunction with the other paragraphs of his will, and, if helpful, his scheme of distribution. Richard, who was the son of testator's wife Kathryn, was mentioned only once in the will, and was given therein one-half of an annuity of $1,200. Neither he nor his children or issue were *specifically* given any interest in remainder, except for his daughter, Dorothy, who was referred to by the testator as *"my wife's grandchild* Dorothy Adele Allen." Moreover, if appellant's interpretation of this Eleventh paragraph is correct, this paragraph would have to read: ". . . I have at the time of the execution of this my Last

---

** Italics throughout, ours, unless otherwise noted.

Will one grandchild, MARGARET ANN LILLEY, and my wife has one grandchild by a former marriage, DOROTHY ADELE ALLEN. At the death of the last surviving child of mine and [of the last surviving child] of my wife KATHRYN C. LILLEY, I direct that . . . my residuary estate shall be divided into as many equal parts as there may be grandchildren [of mine and *grandchildren of my wife*] then living, including my wife's grandchild DOROTHY ADELE ALLEN."

In the light of the foregoing provisions of his will, how can Natalie fairly and successfully contend that the testator manifested a testamentary intent to give his residuary estate to his then living grandchildren and Kathryn's then living grandchildren, and that he treated and intended to treat both the Lilley family and the Allen family *equally*? The naming of his wife's grandchild, Dorothy Adele Allen, as entitled to be included in the gift of the remainder would not only further confuse the meaning of this clause, but likewise *negate appellant's interpretation* of this ultimate gift of principal to Kathryn's then living grandchildren. Furthermore, the unanticipated early death of all of testator's surviving children before Kathryn's death would terminate his wife Kathryn's interest in the income, which would be undoubtedly contrary to testator's often expressed wishes and intent to especially benefit his wife Kathryn.

For these reasons, we believe that the testator provided a gift of principal of his residuary estate upon the death of (a) his wife Kathryn and (b) his last surviving child, to his then living grandchildren and his wife's named grandchild, Dorothy Adele Allen. We agree with the unanimous decision of the Orphans' Court which excluded Natalie from sharing in testator's residuary gift.

Decree affirmed, each party to pay own costs.

Mr. Justice JONES and Mr. Justice ROBERTS took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.